# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CMI LIMITED COMPANY

    Plaintiff,

v.

SHORELINE PLASTICS, LLC; GULF
SYNTHETICS, LLC; and EVERLAST
SYNTHETIC PRODUCTS, LLC

    Defendants.

Civil Action No.:
1:09-cv-1421 WSD

## JOINT CLAIM CONSTRUCTION STATEMENT

Pursuant to Local Patent Rule (LPR) 6.3, CMI Limited Company. ("CMI")
and Defendant Shoreline Plastics, LLC. ("Shoreline") have completed and hereby
file their Joint Claim Construction Statement with respect to U.S. Patent No.
6,575,667 as follows:

## I.    <u>CONSTRUCTIONS AGREED UPON BY THE PARTIES</u>

Pursuant to LPR 6.3(b)(1), the parties agree that terms of the patent-in-suit not disputed herein retain their plain and ordinary meaning.  The parties further agree that the following terms have a meaning that the parties have agreed upon and, therefore, do not need to be construed by the Court:

| <u>Claim Term</u> | <u>Construction Agreed Upon by Parties</u> |
|---|---|
| male connecting portion (claims 1, 2, 3, 14, 15, 16, 20, 21, 23) | "a T-shaped connector that is separate and distinct from a female connecting portion." |
| female connecting portion (claims 1, 2, 3, 14, 15, 16, 20, 21, 23) | "a C-shaped connector that is separate and distinct from the male connecting portion." |

## II.  **PROPOSED CONSTRUCTIONS BY EACH PARTY OF DISPUTED CLAIM TERMS**

Pursuant to LPR 6.3(b)(2), after the exchange of the parties' Preliminary Claim Constructions, the parties have conferred and attempted to identify terms for which constructions are disputed and require construction by the Court. The following chart contains those terms that are currently disputed by the parties. Note, to the extent that a claim term, phrase, or clause is repeated in multiple claims within a patent, the parties construe that claim term, phrase, or clause similarly in each claim of that same patent unless otherwise noted. Thus, the claim term may only be construed once for one claim with the understanding that the same construction applies where the term, phrase, or clause appears in other claims of that same patent.

Further, the parties reserve the right to supplement or amend their respective constructions as the claim construction process proceeds to the extent necessary and/or as prescribed by the Federal Rules, the Court, the Court's rules, and/or applicable law.

| Claim term, phrase, and/or clause | CMI's Proposed Construction and Support | Shoreline's Proposed Construction and Support |
|---|---|---|
| consisting essentially of/consists essentially of (claims 1, 15, 19, 20, 21, 22) | "including listed ingredient(s) and open to unlisted ingredients that do not materially affect the basic and novel properties of the invention."<br><br>*Note: Defendant also agrees to this definition, but insists on construing this claim phrase in conjunction with other claim terms (i.e., plastic/plastic construction and polyvinyl chloride). Plaintiff maintains that "consisting essentially of/consists essentially of" has its own claim construction and should be construed independently from other claim terms/phrases. However, after this claim phrase is so construed, its construction can be considered in conjunction with other properly construed claim terms/ phrases.* | |
| plastic/plastic construction (claims 1, 15, 20, 21) | "a material that is primarily composed of thermoplastic or thermosetting polymers"<br><br>Ordinary Meaning;<br>Specification: Column 1, Lines 23-25; Column 2, Lines 42-52; Column 4, Lines 15-43; | |

| | | |
|---|---|---|
| | Prosecution History: Examiner Interview Summary submitted by Examiner January 25, 2008, Supplemental Amendment and Response filed January 15, 2008, page 15; Extrinsic Evidence: Dictionary Definitions and Expert Testimony.<br><br>*Note: Defendant insists on construing this claim phrase in conjunction with other claim terms ("consisting essentially of/consists essentially of").  Plaintiff maintains that "plastic/plastic construction" has its own claim construction and should be construed independently from other claim terms/phrases.  However, after this claim phrase is so construed, its construction can be considered in conjunction with other properly construed claim terms/ phrases.* | |
| polyvinyl chloride (claims 13, 19, 20, 22) | "a material primarily composed of a polymer of vinyl chloride"<br><br>Ordinary Meaning;<br>Specification: Column 2, Lines 42-52; Column 4, Lines 15-43;<br>Prosecution History: Examiner Interview Summary submitted by Examiner January 25, 2008, Supplemental Amendment and | |

| | | |
|---|---|---|
| | Response filed January 15, 2008, page 15; Extrinsic Evidence: Dictionary definitions and Expert Testimony.<br><br>*Note: Defendant insists on construing this claim phrase in conjunction with other claim terms ("consisting essentially of/consists essentially of"). Plaintiff maintains that "polyvinyl chloride" has its own claim construction and should be construed independently from other claim terms/phrases. However, after this claim phrase is so construed, its construction can be considered in conjunction with other properly construed claim terms/ phrases.* | |
| "consisting essentially of plastic/plastic construction" (claims 1, 15, 20, 21) | *Note:  Plaintiff maintains that this claim phrase should be separately construed according to its base terms/phrases, which are "consisting essentially of/consists essentially of" and "plastic/plastic construction."  After these base claim phrases have been properly construed, as set forth above, their respective constructions may provide insight and context relative to each other.  See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005).* | "includes plastic but excludes stiffening additives"<br><br>The phrase should be construed in its entirety.  It cannot properly be construed without determining the basic and novel properties of the invention.  By using the term "consisting essentially of," the drafter signals that the invention necessarily includes the listed ingredients (i.e., in this case plastic) and is open to unlisted ingredients that do not materially affect the basic and novel properties of the invention. |

|  |  | *See Ex parte Davis*, 80 U.S.P.Q. 448, 449-50 (Pat. Off. Bd. App. 1948); *Manual of Patent Examining Procedure* §2111.03 (8th ed. 2001); *PPG Industries Inc. v. Guardian Industries Corp.*, 48 U.S.P.Q.2d 1351, 1353 (Fed. Cir. 1998). |
|  |  | The ordinary meaning of the term "plastic" is not at issue. Rather it is the phrase "consisting essentially of plastic/plastic construction" that is in dispute. |
|  |  | The specification (Col. 2, lines 37-51), which discloses a wide range of materials, including "plastic, wood, steel, other sufficiently rigid materials, or combinations of these materials," is not particularly helpful, because it does not discuss the basic and novel properties of the invention as it relates to the phrase. |
|  |  | Instead, the prosecution history clearly and unambiguously addresses the basic and novel properties and limits the claim scope. The phrase was added to the claims during reexam in an effort to traverse an obviousness rejection based in part upon prior art that taught fiberglass panels of substantially similar configuration. |

| | | |
|---|---|---|
| | | *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination,* [P. 17]: "A desirable feature of the reexam '667 patent is that the panel is at least 24 inches wide. The inventors developed a successful seawall panel that is formed in a configuration that is suitable for continuous manufacture as by extrusion, and the panel may be made of polyvinyl chloride and other plastics **without the need for stiffening additives** such as continuous fiberglass reinforcement, etc." (emphasis added) |
| | | *Statement of Kevin T. Burt under 37 CFR 1.132,* [¶ 20]: "With the above noted configuration, as shown in the patent drawings, and as emphasized in Figs. A and B, a successful seawall panel has been developed that is formed in a configuration that is suitable for continuous manufacture as by extrusion, and the panel may be made of polyvinyl chloride and other plastics **without the need for stiffening additives** such as fiberglass sheets, etc." (emphasis added) |
| | | According to an Ex parte Reexamination |

| | | Interview Summary dated January 23, 2008, the examiner and patentee agreed that the inclusion of a "**closed ended limitation**" with respect to the plastic material or PVC would overcome this combination for Claims 1, 15, 20 and 21.<br><br>Extrinsic Evidence: Dictionary Definitions and Expert Testimony |
|---|---|---|
| "consisting essentially of polyvinyl chloride" (claim 22) | *Note:  Plaintiff maintains that this claim phrase should be separately construed according to its base terms/phrases, which are "consisting essentially of/consists essentially of" and "polyvinyl chloride." After these base claim phrases have been properly construed, as set forth above, their respective constructions may provide insight and context relative to each other. See <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005).* | "includes polyvinyl chloride but excludes stiffening additives"<br><br>Support for this construction is the same as provided above for the phrase "consisting essentially of plastic/plastic construction." |
| first end (claims 1, 4, 5, 15, 20, 21) | "a first terminating portion that is separate and distinct from a second end/terminating portion"<br><br>Ordinary Meaning;<br>Specification: FIGS. 1-3 and 10; Column 1, Lines 52-57; Column 3, lines 21-30. | "one extremity of the central portion or continuous central portion that connects the continuous central portion to the first side"<br><br>Ordinary Meaning;<br>Claims 1, 4, 5, 15, 20, 21<br>Specification Col. 1, lines 53-56; Col. 3, |

| | | |
|---|---|---|
| | | lines 35-38; #22 in Fig. 1. |
| second end (claims 1, 4, 5, 15, 20, 21) | "a second terminating portion that is separate and distinct from the first terminating portion"<br><br>Ordinary Meaning;<br>Specification: FIGS. 1-3 and 10; Column 1, Lines 52-57; Column 3, lines 21-30. | "another extremity of the central portion or continuous central portion that connects the continuous central portion to the second side"<br><br>Ordinary Meaning;<br>Claims 1, 4, 5, 15, 20, 21<br>Specification Col. 1, lines 53, 56-58; Col. 3, lines 35-36, 38-40; #24 in Fig. 1. |
| central portion (claim 21) | "a section or part that is situated in a middle"<br><br>Specification: FIGS. 1-3 and 10; Column 1, Lines 50-53; Column 3, Lines 21-36; Extrinsic Evidence: Dictionary Definitions and Expert Testimony. | "a section or part that is situated at the center and extends to the first and second sides" |
| continuous central portion (claims 1, 15, 20) | "a one-piece part in a middle region"<br><br>Specification: FIGS. 1-3 and 10; Column 1, Lines 50-53; Column 3, Lines 21-36; Extrinsic Evidence: Dictionary Definitions and Expert Testimony. | "a section or part that is situated at the center, is uninterrupted and extends to the first and second sides"<br><br>Ordinary Meaning;<br>Claims 1, 15, 20<br>Extrinsic Evidence: Dictionary definitions<br><br>Except for the claims, the Specification is devoid of any mention of continuous. |

| a width of at least about 24 inches (claims 1, 15, 20, 21) | "a distance between the male connecting portion and the female connecting portion that is reasonably close to 24 inches at a minimum"<br><br>Ordinary Meaning; Specification: Column 2, Line 36; Prosecution History: Affidavit filed 5/20/2002, response filed 5/29/02. Extrinsic Evidence: Dictionary Definitions, Expert Testimony, www.uspto.gov, one or more U.S. issued patents. | Shoreline maintains that this phrase is indefinite and renders all affected claims invalid, as set forth in Shoreline's pending motion for summary judgment.<br><br>To satisfy 35 U.S.C. § 112, ¶2, claims must "reasonably apprise those skilled in the art as to their scope" and be "as precise as the subject matter permits." *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624, 225 USPQ 634, 641 (Fed. Cir. 1985). Applying 35 U.S.C. § 112, ¶2, in *Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200; 18 USPQ2d 1016 (Fed. Cir. 1991), the Federal Circuit affirmed invalidity of claims reciting a specific activity limitation of "at least about 160,000." The Amgen court recognized that use of the term "about" did not permit one to know what specific activity values below 160,000, if any, might constitute infringement. Id. at 1217. The holding in Amgen was supported by the fact that nothing in the specification provided any indication as to what range of specific activity was covered by the term "about." Id. at 1218. Here, the claim limitation is equally imprecise. The specification fails to provide any objective |

| | | |
|---|---|---|
| | | criteria for precise delineation. The public cannot draw a line between what infringes and what does not. |
| | | Specification: Col. 4, line 37; Fig. 10. Prosecution History: |
| | | In the event the court finds this phrase definite, then Shoreline maintains that the construction must be limited to "a width of at least 24 inches." The prosecution history is replete with arguments that the claims recite a panel having a width of at least 24 inches. Nonlimiting examples include: |
| | | *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination,* [P. 17]: "A desirable feature of the reexam '667 patent is that the panel is at least 24 inches wide." |
| | | *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination,* [P. 18]: "The greater width of at least 24 inches of the panels provides the long desired but previously unavailable ability to use fewer thermoplastic retaining panels per linear foot of a seawall during |

|  |  | construction of a seawall." |
|  |  | *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination,* [P. 21]: "Claims 1, 15 and 21 describe the retaining panel in detail, and state that the width of the panel is at least 24 inches wide. ... No references were cited in the original examination that disclose one piece plastic retaining panels formed by extrusion that are at least 24 inches wide." |
|  |  | *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination,* [P. 22]: "And even with continuous fiberglass reinforcement the Lewis '667 panel is not at least 24 inches wide." |
|  |  | *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination,* [P. 24]:  "Claim 15 is an independent claim. It sets forth the width of the panel being at least 24 inches." |
|  |  | *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination,* [P. 26]: "Claim 20 has |

| | | been amended to be in independent form. It includes the limitation of at least 24 inches wide…" |
|---|---|---|
| substantially uniform thickness (claims 2, 3, 15) | "a thickness that is mostly consistent over the entirety"<br><br>Specification: Column 2, Lines 16-19; Prosecution History: Reexamination Prosecution History, Supplemental Amendment and Response filed January 15, 2008, page 17; Extrinsic evidence: Dictionary and Definitions, Expert Testimony. | "largely the same thickness, without an enlarged thickness portion, allowing all portions of the panel to cool at substantially the same rate and avoiding variations in thickness of the magnitude of fiberglass panels."<br><br>Specification:  Col. 2, lines 16-18; Col. 4, line 38; Figs. 10, 12.<br><br>Prosecution History:<br><br>*Supplemental Amendment And Response To Office Action In Ex Parte Reexamination* [pp. 17-18]: "The uniform thickness of the panels is a benefit in that the cooling of the panels after fabrication is substantially uniform, with all portions of the panels cooling at substantially the same rate so that bowing, bending, or warping of the panels is minimized during cooling and contraction of the material." |

| | | |
|---|---|---|
| | | *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination* [p. 20]: "The RAW brochure discloses panels made of fiberglass composites. ... They are likely to be inconsistent and not have the uniform thickness and uniform shape of the extruded panels." |
| | | *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination* [p. 23]: "Dependent claims 2 and 3 describe that the retaining panel is formed of substantially uniform thickness and the male connecting portion is of substantially the same thickness as the remaining portions of the panel. Claim 3 asserts that the female connection portion is of substantially the same thickness as the remaining portions of the panel. These features are not disclosed in the applied references." |
| | | *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination* [p. 24]: "Claim 19 describes the retaining panel consisting essentially of polyvinylchloride, of one piece construction, of substantially uniform |

| | | |
|---|---|---|
| | | thickness, and shaped for continuous manufacture. The references do not teach or make obvious the wide panels made of PVC and being of uniform thickness." <br><br> *Supplemental Amendment And Response To Office Action In Ex Parte Reexamination* [p. 29]: "Claim 3 of the Reexam '667 patent states that the retaining panel is of substantially uniform thickness. By contrast, Lewis '971 includes an enlarged locking or connecting bead 30, shown in Figs. 2 and 3. Obviously, in order to function properly, the locking or connecting bead 30 is of larger diameter than the width of the adjacent neck 32. This enables the female locking element shown in Fig. 3 to surround a portion of the male locking element 30." <br><br> Extrinsic evidence: Dictionary and Definitions, Expert Testimony. |
| substantially the same thickness (claims 2, 3) | "a mostly equal thickness" <br><br> Specification: Column 2, Lines 16-19; Reexamination Prosecution History: Supplemental Amendment and Response filed January 15, 2008, page 17; | "largely the same thickness, without an enlarged thickness portion, allowing all portions of the panel to cool at substantially the same rate and avoiding variations in thickness of the magnitude of fiberglass panels." |

| | | |
|---|---|---|
| | Extrinsic Evidence: Dictionary Definitions and Expert Testimony. | Specification: Col. 2, lines 16-18; Col. 4, line 38; Figs. 10, 12.<br><br>Prosecution History:<br><br>*Supplemental Amendment And Response To Office Action In Ex Parte Reexamination* [pp. 17-18]: "The uniform thickness of the panels is a benefit in that the cooling of the panels after fabrication is substantially uniform, with all portions of the panels cooling at substantially the same rate so that bowing, bending, or warping of the panels is minimized during cooling and contraction of the material."<br><br>*Supplemental Amendment And Response To Office Action In Ex Parte Reexamination* [p. 20]: "The RAW brochure discloses panels made of fiberglass composites. ... They are likely to be inconsistent and not have the uniform thickness and uniform shape of the extruded panels."<br><br>*Supplemental Amendment And Response To Office Action In Ex Parte Reexamination* [p. 23]: "Dependent claims |

2 and 3 describe that the retaining panel is formed of substantially uniform thickness and the male connecting portion is of substantially the same thickness as the remaining portions of the panel. Claim 3 asserts that the female connection portion is of substantially the same thickness as the remaining portions of the panel. These features are not disclosed in the applied references."

*Supplemental Amendment And Response To Office Action In Ex Parte Reexamination* [p. 24]: "Claim 19 describes the retaining panel consisting essentially of polyvinylchloride, of one piece construction, of substantially uniform thickness, and shaped for continuous manufacture. The references do not teach or make obvious the wide panels made of PVC and being of uniform thickness."

*Supplemental Amendment And Response To Office Action In Ex Parte Reexamination* [p. 29]: "Claim 3 of the Reexam '667 patent states that the retaining panel is of substantially uniform thickness. By contrast, Lewis '971 includes an enlarged locking or connecting bead 30,

| | | |
|---|---|---|
| | | shown in Figs. 2 and 3. Obviously, in order to function properly, the locking or connecting bead 30 is of larger diameter than the width of the adjacent neck 32. This enables the female locking element shown in Fig. 3 to surround a portion of the male locking element 30."<br><br>Extrinsic evidence: Dictionary Definitions, Expert Testimony. |
| fifth angle (claims 15, 20, 21) | "the angle by which the distal portion of the first flange rises to the female connecting portion"<br><br>Ordinary meaning: clear and apparent based on the contextual language of the claim;<br>Specification: FIGS. 1-3 and 10-12. | This limitation renders claims 15-20 & 21 invalid under the first paragraph of 35 U.S.C. § 112 for failing to comply with the written description requirement. The written description requirement mandates that claimed features be described in the specification with "reasonable clarity." A fifth angle is not shown in the Figures or mentioned at all in the specification.<br><br>Concomitantly, this limitation renders claims 15-20 & 21 invalid for indefiniteness, failing to satisfy the requirements of 35 U.S.C. § 112, ¶2. Nothing in the specification provides any indication as to the location of a fifth angle or diverging planar surfaces or lines which define a fifth angle. |

| | | |
|---|---|---|
| | | The Figures show curved surfaces in the transition from the first flange to the female connecting portion.<br><br>Extrinsic evidence: Dictionary Definitions |
| sixth angle (claims 15, 20, 21) | "the angle by which the distal portion of the second flange rises to the male connecting portion"<br><br>Ordinary meaning: clear and apparent based on the contextual language of the claim;<br>Specification: FIGS. 1-3 and 10-12. | This limitation renders claims 15-20 & 21 invalid under the first paragraph of 35 U.S.C. § 112 for failing to comply with the written description requirement. The written description requirement mandates that claimed features be described in the specification with "reasonable clarity." A sixth angle is not shown in the Figures or mentioned at all in the specification.<br><br>Concomitantly, this limitation renders claims 15-20 & 21 invalid for indefiniteness, failing to satisfy the requirements of 35 U.S.C. § 112, ¶2. Nothing in the specification provides any indication as to the location of a sixth angle or diverging planar surfaces or lines which define a sixth angle.<br><br>The Figures show curved surfaces in the transition from the first flange to the male connecting portion. |

| | | Extrinsic evidence: Dictionary Definitions |
|---|---|---|

III.   **ANTICIPATED LENGTH OF TIME NECESSARY FOR THE CLAIM CONSTRUCTION HEARING**

Pursuant to LPR 6.3(b)(3), the parties anticipate that the Claim Construction Hearing should not exceed one to two days.

IV.   **EXTRINSIC EVIDENCE – EXPERT TESTIMONY**

A.   **Plaintiff**

Pursuant to LPR 6.3(b)(4), CMI proposes that it may call one or more witnesses, including experts, at the Claim Construction Hearing.  CMI anticipates that it may call the following individual as an expert witness:

John Irvine
CMI LIMITED COMPANY
4501 Circle 75 Pkwy
Suite E-5370
Atlanta, GA 30339

Mr. Irvine's expert opinion is likely to relate to the meaning and construction of the parties' respective proposed claim constructions in light of the specification of the '667 patent, the file history of the '667 patent, the state of the art, uses of the claim terms, phrases, and/or clauses in dictionaries, prior art, etc., Defendant's proposed constructions, Defendant's extrinsic evidence, including any proposed expert testimony, the parties' Rule 6.1 submissions, the parties' 6.2 submissions, the parties' Claim Construction Briefs, and any questions propounded

by the Court during the Claim Construction Hearing. CMI's expert may also provide testimony and/or a tutorial relating to the general and specific technology of the '667 patent, the specification of the '667 patent, the prosecution history of the '667 patent, and the state of the art before and after the filing date of the '667 patent. A more specific summary of the Mr. Irvine's opinion is attached herewith as Exhibit A.

### B.    Defendant

Pursuant to LPR 6.3(b)(4), Shoreline proposes that it may call one or more witnesses, including experts, at the Claim Construction Hearing. Shoreline currently anticipates that it may call the following individual as an expert witness:

> Hans Matthesius
> 579 Lassing Way
> Richwood, KY 41094

The expert opinion is likely to relate to the meaning and construction of the parties' respective proposed claim constructions in light of the specification of the '667 patent, the file history of the '667 patent, the state of the art, uses of the claim terms, phrases, and/or clauses in dictionaries, prior art, Shoreline's proposed constructions, Shoreline's extrinsic evidence, including any proposed expert testimony, the parties' Rule 6.1 submissions, the parties' 6.2 submissions, the parties' Claim Construction Briefs, and any questions propounded by the Court

during the Claim Construction Hearing.  A more specific summary of the Mr. Matthesius' opinion is attached herewith as Exhibit B.  His opinion is based upon a review of the '667 patent, the file history, his experience, his knowledge and training, and his knowledge of what one of ordinary skill in the field of extruded panels would understand.

This 24th day of November, 2009.


s/N. Andrew Crain

George M. Thomas
Georgia State Bar No. 704900
N. Andrew Crain
Georgia State Bar No. 193081
Melissa Rhoden
Georgia State Bar No. 143160
Anthony F. Bonner
Georgia State Bar No. 141525
**THOMAS, KAYDEN,**
**HORSTEMEYER**
**& RISLEY, LLP**
600 Galleria Parkway, S.E.
Suite 1500
Atlanta, GA 30339
Telephone: (770) 933-9500
Facsimile: (770) 951-0933


Attorneys for Plaintiff

s/Anthony Bonner with express
authorization from s/Mark J. Young

Mark J. Young
Admitted Pro Hac Vice
myoung@myoungpa.com
Mark Young, P.A.
Arkansas Bar No. 74114
12086 Fort Caroline Road
Unit 202
Jacksonville, Florida 32225
Telephone (904) 996-8099
Facsimile (904) 980-9234

Attorney for Defendant

**Exhibit A**

**<u>SUMMARY OF OPINIONS OF JOHN IRVINE</u>**

- Based upon my review of the '667 patent, as well as my experience and knowledge of what one of ordinary skill in the art of seawall design would understand, the claim term "a width of about 24 inches," in the context of the claims, has a clear and unambiguous meaning that indicates a distance between the male connecting portion and the female connecting portion that is reasonably close to 24 inches at a minimum."

- Based upon my review of the '667 patent, as well as my experience and knowledge of what one of ordinary skill in the art of seawall design would understand, the claim term "fifth angle" has a clear and unambiguous meaning that indicates "the angle by which the distal portion of the first flange rises to the female connecting portion."

- Based upon my review of the '667 patent, as well as my experience and knowledge of what one of ordinary skill in the art of seawall design would understand, the claim term "sixth angle" has a clear and unambiguous meaning that indicates "the angle by which the distal portion of the second flange rises to the male connecting portion."

8

- Based upon my review of the '667 patent, as well as my experience and knowledge of what one of ordinary skill in the art of seawall design would understand, the claim term "plastic" indicates that the primary ingredient is "plastic." Additionally, additives, such as stiffeners *may or may not* be added.

- Based upon my review of the '667 patent, as well as my experience and knowledge of what one of ordinary skill in the art of seawall design would understand, the claim term "polyvinyl chloride" indicates that the primary ingredient is "polyvinyl chloride." Additionally, additives, such as stiffeners *may or may not* be added.

- After taking an opportunity to review the proposed claim constructions for disputed terms in the Joint Claim Construction Statement, one of ordinary skill in the art would most likely agree with the proposed constructions of Plaintiff, CMI.

- I reserve the right to supplement or revise these opinions based on additional information, or to demonstrate my testimony through visual aids and/or other supporting information.

**Exhibit B**

## <u>SUMMARY OF OPINIONS OF HANS MATTHESIUS</u>

- The phrase "a width of about 24 inches," in the context of the claims, is indefinite. The specification fails to identify any objective criteria for precise delineation of a lower limit. One cannot draw a line between what infringes and what does not.

- The phrases "consisting essentially of plastic/plastic construction/polyvinyl chloride," in the context of the claims, exclude stiffening additives.

- A "fifth angle" is not described in the specification.

- A "sixth angle" is not described in the specification.

- "Substantially the same /substantially uniform thickness" means largely the same thickness, without an enlarged thickness portion, allowing all portions of the panel to cool at substantially the same rate and avoiding variations in thickness of the magnitude of fiberglass panels.

- After taking an opportunity to review the proposed claim constructions for disputed terms in the Joint Claim Construction Statement, one of ordinary skill in the art would most likely agree with the proposed constructions of Defendant, Shoreline.

- I reserve the right to supplement or revise these opinions based on further review and/or additional information, and to demonstrate my testimony through visual aids and/or other supporting information.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CMI LIMITED COMPANY

      Plaintiff,

v.

SHORELINE PLASTICS, LLC; GULF
SYNTHETICS, LLC; and EVERLAST
SYNTHETIC PRODUCTS, LLC

      Defendants.

Civil Action No.:
1:09-cv-1421 WSD

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing:

JOINT CLAIM CONSTRUCTION STATEMENT

was caused to be served upon the following attorneys of record via the Court's CM/ECF system on November 24, 2009:

    Shattuck Ely (*tely@fellab.com*)
    Mark J. Young (*myoung@myoungpa.com*)

                            s/N. Andrew Crain
                            Attorney for Plaintiff

12